OPINION
{¶ 1} Anthony Jones appeals from his conviction and sentence on four counts of rape in violation of R.C. § 2907.02(A)(1)(b).
 {¶ 2} Jones advances seven assignments of error on appeal. First, he contends the trial court erred in applying the rape-shield law to prevent him from introducing evidence at trial about the victim's sexual history. Second, he claims the trial court erred in failing to dismiss a second indictment against him based on a violation of his right to a speedy trial. Third, he asserts that prosecutorial misconduct deprived him of his right to a fair trial. Fourth, he argues that he received constitutionally ineffective assistance of counsel. Fifth, he maintains that his convictions are "against the sufficiency and/or manifest weight of the evidence." Sixth, he contends the trial court erred in providing an inaccurate jury instruction. Seventh, he claims the trial court erred in ordering too lengthy a term of incarceration if he violates the conditions of his post-release control.
 {¶ 3} The present appeal stems from an allegation by A.B., a minor, that Jones had engaged in sexual intercourse with her five times when she was twelve years old. After A.B.'s mother heard about the sexual activity, she contacted the Dayton Police Department. Detective William Swisher interviewed Jones about the issue, and Jones admitted in writing that he "had sex with her about 5-6 time[s]." Jones maintained that the sexual encounters were consensual, however, and that A.B. had lied to him about her age.
 {¶ 4} On April 22, 2004, Jones was charged by complaint with one count of rape in violation of R.C. § 2907.02(A)(1)(b), which generally prohibits sexual conduct with a person less than thirteen years of age. Jones appears to have been arrested on a warrant the same day.[1] The record reflects that he was held in jail on a $50,000 bond. Thereafter, on May 20, 2004, a grand jury indicted Jones on one count of rape. On August 25, 2004, the prosecutor re-indicted Jones on four additional counts of rape based on his sexual conduct with A.B. The second indictment reflects that Jones remained in jail at that time.
 {¶ 5} On September 16, 2004, Jones moved to dismiss the August 25, 2004, indictment. In support, he argued that speedy trial time began running on the second indictment on his original arrest date and that he had not waived any time on the second indictment. Because he had been incarcerated for more than 90 days after April 22, 2004, Jones argued that his speedy trial time had expired on the second indictment. The trial court overruled Jones' motion in a November 16, 2004, decision and entry, finding that he "is scheduled for trial within 90 days of the initiation of the four (4) additional counts."
 {¶ 6} Jones subsequently proceeded to trial on both indictments on November 17-18, 2004. Based on the evidence presented, a jury convicted Jones on four of the five identical counts and acquitted him on the other count. The trial court later sentenced him to four concurrent three-year terms of imprisonment. This timely appeal followed.
 {¶ 7} In his first assignment of error, Jones contends the trial court erred in applying the rape-shield law to prevent him from introducing evidence at trial about the victim's sexual history. In particular, he argues that application of the rape-shield law in this case violated his Sixth andFourteenth Amendment rights.
 {¶ 8} Jones' rape-shield argument is two-fold. The first part of his argument concerns A.B.'s direct examination testimony about the last time she saw him. She told the jury that she went to his apartment because she thought she was pregnant and wanted to discuss it with him. In light of this testimony, Jones contends he should have been allowed to introduce evidence of A.B.'s sexual activity with a boy named Kelvin. Absent this evidence, Jones reasons that the jury had "no other alternative but to assume that [he] was responsible for the pregnancy."
 {¶ 9} Having reviewed the record, we find no merit in Jones' argument. As an initial matter, we note that defense counsel failed to raise this particular issue at trial. We note too that there is no evidence A.B. in fact was pregnant. But even setting these issues aside, we reject Jones' argument for a third reason. During a pretrial hearing, A.B. testified that she last had sex with Jones in February 2004. She then testified that she ran away from home after Jones' arrest and had sex with Kelvin in April 2004. Given that A.B. did not have sex with Kelvin until after
Jones' arrest, Kelvin could not possibly have caused any pregnancy that may have existed when A.B. confronted Jones at his apartment before his arrest. Therefore, Jones had no right to make such an argument to the jury.
 {¶ 10} The second part of Jones' rape-shield argument is equally unpersuasive. He notes that A.B. tested positive for a sexually transmitted disease after his arrest and he tested negative for the disease. Jones appears to rely on his clean test to support an inference that he did not have sex with A.B., and he asserts that the jury should have heard this evidence. We disagree. As noted above, A.B. stopped having sex with Jones in February 2004. She testified at the pretrial hearing that she had tested negative for sexually transmitted diseases in December 2003 and February 2004, which was around the time of her last sexual activity with Jones. A.B. also testified that she had sex with Kelvin in April 2004 shortly before she tested positive for a sexually transmitted disease. In light of these facts, the only reasonable inference that could be drawn is that A.B. contracted a sexually transmitted disease from Kelvin. Given that A.B. did not have sex with Jones after having sex with Kelvin, Jones' clean tests fail to support an inference that he did not engage in sexual conduct with her.
 {¶ 11} On appeal, Jones also mentions A.B.'s sexual activity with three other boys a year to a year and one-half earlier. It is unclear whether Jones' rape-shield argument encompasses these incidents. In any event, the sexual activity with the three boys, which was mentioned during the rape-shield hearing, occurred long before Jones' sexual conduct with A.B. Therefore, we find no error in the trial court's determination that evidence about it was inadmissible. Jones' first assignment of error is overruled.
 {¶ 12} In his second assignment of error, Jones claims the trial court erred in failing to dismiss the second indictment against him on the basis of a speedy trial violation. As he did in the trial court, Jones addresses his statutory speedy trial right under R.C. § 2945.71, et seq., "which sections `* * * constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state.'" State v. Adams (1989),43 Ohio St.3d 67, 68, quoting State v. Pachay (1980),64 Ohio St.2d 218.
 {¶ 13} Under R.C. § 2945.71(C)(2), a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." Each day an accused is held in jail in lieu of bail shall be counted as three days for computation of time purposes. R.C. § 2945.71(E). In addition, the Ohio Supreme Court has held that "[w]hen new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applicable to the original charge." Adams,43 Ohio St.3d at 68, quoting State v. Clay (1983),9 Ohio App.3d 216, 218. Moreover, "`[w]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver.'" State v. Boles, Montgomery App. No. 18762, 2003-Ohio-2693, at ¶ 13, quoting Adams, 43 Ohio St.3d at syllabus. "[E]ven where the accused knows of the possibility of additional charges being brought against him, a waiver of speedy trial rights cannot apply to charges brought subsequent to the waiver." Id., citing State v. Jackson (Sept. 18, 1998), Montgomery App. No. 17056.
 {¶ 14} In the present case, Jones was arrested and charged by complaint on April 22, 2004, with one count of rape for having sex with A.B. when she was twelve years old. The charge was based on a sworn complaint by Detective Swisher. In his complaint, Swisher stated that Jones had "admitted committing the offense." Jones' admission had come during Swisher's interview with him on April 21, 2004. In that interview, Jones wrote and signed a statement that read in part as follows:
 {¶ 15} "I meet [A.B.] last summer at Riverview Park in about June or July and I was told she was older then what her real age was 12 or 13. The very first time me and [A.B.] had sex was around July [or] August, the date I'm not sure.
 {¶ 16} "I have had sex with her about 5-6 times before I knew her real age and none after. * * *"
 {¶ 17} While Jones remained in jail, the prosecutor obtained a one-count rape indictment against him on May 20, 2004. Thereafter, on August 25, 2004, the prosecutor re-indicted Jones on four additional counts of rape involving A.B. On appeal, Jones alleges that the prosecutor added the new counts after he refused to accept a plea bargain. The record contains no evidence, however, to support this allegation. But regardless of why the prosecutor added the additional counts, Jones contends they arise from the same facts and circumstances as the original charge and that the facts underlying the new charges were known to the State at the time of his arrest and original indictment. As a result, Jones asserts that his speedy trial time began to run on the additional charges on April 22, 2004, the date of his arrest. Furthermore, he contends no waiver or motions tolled the speedy trial time on the second indictment. Because he was not brought to trial on the second indictment within 90 days of April 22, 2004, Jones contends the trial court should have found a speedy trial violation and dismissed the second indictment.
 {¶ 18} In overruling Jones' motion the trial court reasoned as follows:
 {¶ 19} "In his Motion, Defendant requests that the Court dismiss the second indictment because Defendant has been incarcerated for more than 90 days and has neither been brought to trial nor waived speedy trial rights with respect to charges contained in the second indictment.
 {¶ 20} "In support of his Motion, Defendant cites to Statev. Boles (Second App. Dist.) 2003 Ohio 2693, in which the State added additional charges against a defendant who refused to enter a plea on a pending indictment. In that case, the Second District held that the additional charges were time barred by Ohio Revised Code § 2945.71 because the defendant had been incarcerated for more than 90 days on the second indictment and had not waived time on the new charges, notwithstanding the fact that time was tolled on the original indictment. Id.
 {¶ 21} "In light of the Boles decision, Defendant argues that `speedy trial time is not tolled as to unindicted charges which are part of a course of conduct known to the State during the pendency of the [original] indicted charge.' Defendant's reliance on the Boles decision is misplaced. Boles involved a time waiver on the initial case and additional counts set beyond the 90 day statutory framework of O.R.C. § 2945.71 on the second indictment.
 {¶ 22} "In the instant case, Defendant is scheduled fortrial within 90 days of initiation of the four (4) additionalcounts. Thus, there is no violation of the speedy trial requirement under O.R.C. § 2945.71 and/or the Sixth Amendment of the United States Constitution." (Doc. #37 at 1-2) (Emphasis added).
 {¶ 23} The trial court was correct in its observation that Jones had been "scheduled for trial within 90 days of initiation of the four (4) additional counts." The crucial issue, however, is whether those counts arose from the same facts and circumstances known to the prosecutor at the time of Jones' arrest on the original charge. If they did, Jones had to be brought to trial within ninety days of his April 22, 2004,arrest rather than within ninety days of his re-indictment. Jones filed his motion to dismiss the second indictment on speedy trial grounds on September 16, 2004, which was almost five months after his arrest. Moreover, as noted above, any time waiver on the first indictment did not apply to the subsequently filed second indictment. Therefore, if the four counts in Jones' second indictment arose from the same facts and circumstances known to the prosecutor at the time of his arrest on the original charge, the second indictment should have been dismissed.
 {¶ 24} In opposition to the foregoing conclusion, the State raises three arguments. First, it contends the record does not reflect that Jones was being held in jail solely on the rape charges when he moved to dismiss the second indictment. Second, the State claims nothing in the record supports Jones' assertion that the additional rape charges were added because he refused a plea offer. Third, the State contends the record does not establish that the charges in the second indictment were based on facts known to the prosecution at the time of the first charge. In particular, the State asserts:
 {¶ 25} "* * * The record does not support Jones' allegation that the State was aware of the other crimes and could have filed a second indictment at any time. The arraignment information sheet establishes only that Jones admitted to sexual conduct with the victim on at least five occasions. It says nothing about whether Jones' admissions to those acts were a sufficient basis for additional charges of rape at the time of the first indictment. Was there corroboration on that date of any of the charges? Did the victim, on that date, say there were five additional instances? If so, were the versions congruent? Counsel alleged the state knew enough to charge Jones with all six counts at the time of the first indictment, but counsel's assertions of what the state must have known are not sufficient to establish a prima-facie case for discharge."[2]
 {¶ 26} We find no merit in the first two arguments. With regard to the first argument, the State is correct that triple counting of speedy trial time does not apply when an accused is being held in jail on other charges involving separate trials.State v. Coleman (1989), 45 Ohio St.3d 298, 304. Here, however, the record satisfies us that Jones was being confined based solely on the rape charges against him in this case.
 {¶ 27} He was arrested and jailed after providing Detective Swisher with a written statement admitting sexual conduct with A.B. His arraignment sheet reflects that he had no previous record. Moreover, the record is devoid of anything to suggest that he was being held on separate charges in another case. The record also establishes that Jones was arrested and jailed on $50,000 bond in this case, and it does not indicate that he ever posted the bond. To the contrary, the second indictment lists Jones' address as the Montgomery County Jail. Therefore, as did the trial court, we believe it is appropriate to triple count time for speedy trial purposes.
 {¶ 28} As for the State's second argument, we agree that nothing in the record supports Jones' assertion that the additional rape charges were added because he refused a plea offer. But the reason for the new charges is not relevant to our speedy trial analysis. Regardless of why the State elected to re-indict Jones, the issue is whether he was brought to trial on the new charges within the required ninety days.
 {¶ 29} The State's third argument requires a more detailed analysis. The primary evidentiary basis for Jones' arrest and the initial rape charge brought against him was A.B.'s allegation and his admission that he had engaged in sexual conduct with her five or six times. The State suggests that Jones' admission to having sex with A.B. five or six times was sufficient to support the first charge but not the identical charges in the second indictment.[3] Determining whether the four counts in Jones' second indictment arose from the same facts and circumstances that were known to the prosecutor at the time of his arrest and original charge — the crucial issue underlying Jones' second assignment of error — requires factual findings that are within the province of the trial court.
 {¶ 30} Unfortunately, however, the trial court did not make factual findings sufficient to resolve the foregoing issue. Instead, it simply held that Jones' motion to dismiss failed because he was brought to trial within ninety days of his second indictment. As explained above, that result is correct only if the charges in the second indictment did not arise from the same facts that were known to the prosecutor at the time of Jones' arrest and the original charge. But the trial court did not speak to this issue at all, and it is not readily apparent to us that the facts and evidence underlying the first charge and the second indictment differed in any material way. Moreover, nothing in the record indicates that the trial court held a hearing on the motion to dismiss despite Jones' request for one.
 {¶ 31} Based on the record before us, we must reverse Jones' convictions and remand the cause to the trial court for a factual determination as to whether the additional charges in the second indictment arose from the same facts as the original charge and, if so, whether the State knew such facts at the time of the initial charge. We previously have taken this course of action when the correctness of a trial court's ruling on a potentially dispositive pretrial motion turns on an unresolved factual issue.State v. Sanchez (March 24, 1995), Montgomery App. No. 14904.[4] We have done so under other circumstances as well. State v. Monroe (July 26, 1995), Montgomery App. No. 14842.[5] Accordingly, we will sustain Jones' second assignment of error to the extent set forth in our analysis above. We hold that the trial court erred in overruling Jones' motion to dismiss without first determining whether the additional charges in the second indictment arose from the same facts as the original charge and, if so, whether the State knew such facts at the time of the initial charge.
 {¶ 32} In his third assignment of error, Jones asserts that prosecutorial misconduct deprived him of his right to a fair trial. In particular, he challenges comments made in the prosecutor's closing argument and a line of questioning during the prosecutor's direct examination of A.B. In order to prevail on his claim, Jones must prove that the prosecutor's conduct was improper and that it prejudiced his substantial rights. State v.Kelly, Greene App. No. 2004-CA-20, 2005-Ohio-305, at ¶ 18.
 {¶ 33} With regard to the prosecutor's closing argument, Jones contends the following statement improperly impugned his character:
 {¶ 34} "Now, in [A.B.'s] mind, she might have thought that it was a great relationship, that [Jones] was her boyfriend and everything, but he wasn't her boyfriend. She was a piece to him. He was something that she could — that he could sleep with and just throw away. That wasn't his girlfriend. She may have thought she was his girlfriend, but she wasn't that. Was just an easy piece for him."
 {¶ 35} Jones also contends the following assertion by the prosecutor during closing argument constituted a misstatement of the evidence:
 {¶ 36} "About [A.B's friend] Letitia's testimony, she testified that [A.B.] already had the address and already had the directions [to Jones' apartment] but she didn't, okay? That was her testimony. And she did not testify that while they were play wrestling that [Jones] was in the bedroom. She said he was in the front room sitting on the pillows."
 {¶ 37} Jones additionally challenges the following comments by the prosecutor on the basis that they suggested he and his attorney were disingenuous and would manufacture evidence:
 {¶ 38} "* * * I can tell you if [A.B.] came in here and she testified consistently with what Detective Swisher said, then it would be another vast conspiracy that we gave her the police report and made sure that she testified and said everything the same way that she said it before.
 {¶ 39} "We don't have any DNA evidence. We don't. Why do we need it? The Defendant admitted that he had sex with her. Complainant said she had sex with him. If they went to his apartment and they found her DNA there, they would just have said, well, weren't you there having sex with somebody else? There's always a way they can get out of it. It's insert excuse here. Unless they find his sperm in her vagina, that's the only way they can't get out of it, and then they might try to get out of it some kind of way. But if they found the DNA on the sheets or whatever? She was there having sex with somebody else."
 {¶ 40} Upon review, we find no prosecutorial misconduct as a result of the foregoing statements. As for the first statement, Jones did not object and, therefore, waived all but plain error. In our view, the prosecutor's remarks about A.B. thinking Jones was her boyfriend were not particularly relevant to his guilt or innocence of the rape charges. But the prosecutor's characterization of the relationship was consistent with A.B.'s testimony, and the remarks were not so improper or prejudicial as to constitute plain error.
 {¶ 41} With regard to the second statement, A.B.'s friend, Letitia, did tell the jury that Jones once had been in the bedroom of his apartment while other people wrestled on the living room floor. The prosecutor misstated the evidence by indicating otherwise. In our view, however, the isolated misstatement, which appears to have been unintentional, concerned a minor point. The parties agree that no sexual activity occurred on that occasion. Moreover, the trial court properly instructed the jury to rely on its own collective memory. We find no prejudice to Jones' right to a fair trial.
 {¶ 42} As for the third statement, Jones once again did not object and waived all but plain error. Although the prosecutor clearly suggested that Jones was being disingenuous by denying guilt and attempting to discredit the State's case, the prosecutor did not accuse Jones or his attorney of manufacturing any evidence. Moreover, the prosecutor made her remarks in response to suggestions by the defense that A.B. had been coached and that the absence of DNA evidence was important. Insofar as the prosecutor suggested to the jury that Jones was lying, such a suggestion could not have surprised the jury or prejudiced Jones. Indeed, in light of the State's attempt to secure a conviction in the face of Jones' not-guilty plea, it already was manifestly apparent that the prosecutor disbelieved Jones. For the foregoing reasons, we find no plain error in the prosecutor's suggestion that Jones was being disingenuous.
 {¶ 43} Jones' final allegation of prosecutorial misconduct involves the following exchange between the prosecutor and A.B. on direct examination:
Q. "And tell us why you went to see the Defendant."
A. "Because I thought I was pregnant by him."
Q. "And you went to discuss that with him?"
A "Yes, ma'am."
Q. "And what did he say to you when you told him you might be pregnant?"
A "I had to get an abortion if I was."
Q. "Did he want to have sex with you on that day?"
A "No, ma'am."
Q. "Did he give you anything that day?"
A "Yes. He gave me $2 to get home."
Q. "To catch the bus home?"
A "Yes, ma'am."
Q. "The whole time you were with the Defendant, from summer of 2003 to when you last had sex with him in February of 2004, did he ever give you anything?"
A "No, ma'am."
Q. "Like any gifts, any cards, any letters?"
A "No, ma'am."
 {¶ 44} Jones argues that the foregoing testimony was inflammatory and emotionally charged. He contends any possible probative value of the testimony was outweighed by the danger of unfair prejudice. Upon review, we are inclined to agree that the testimony was not particularly relevant. A.B. already had testified about having sex with Jones multiple times. Whether she was pregnant, whether Jones told her to get an abortion, and whether he bought her gifts had no bearing on his guilt or innocence. Defense counsel did not object, however, and we find no plain error. Even if the line of questioning was irrelevant, we find no substantial prejudice to Jones' right to a fair trial, particularly in light of his own written admission that he had sex with A.B. five or six times. Jones' third assignment of error is overruled.
 {¶ 45} In his fourth assignment of error, Jones argues that he received constitutionally ineffective assistance of counsel. In support, he contends his trial counsel improperly failed to (1) object to inflammatory testimony from A.B. about the possible pregnancy and Jones telling her to get an abortion if she was, (2) invoke the rape-shield law in connection with A.B.'s testimony about the possible pregnancy, (3) object to inaccurate jury instructions and an erroneous sentence, and (4) request more specific offense dates in the verdict forms.
 {¶ 46} We review Jones' claim under the two-part test ofStrickland v. Washington (1984), 466 U.S. 668. "To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal,87 Ohio St.3d 378, 388-389, 2000-Ohio-448. When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, supra, at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 47} In the present case, Jones has not established constitutionally ineffective assistance of counsel. A.B.'s testimony about thinking she was pregnant and Jones telling her to get an abortion at least arguably was objectionable as being irrelevant or unfairly prejudicial. In light of Jones' confession to having had sex with A.B. five or six times, however, we are convinced that counsel's failure to object did not affect the outcome of the trial. For the same reason, we find no prejudice to Jones arising from his attorney's failure to make a rape-shield challenge to A.B.'s testimony. We note too that we rejected Jones' rape-shield argument on its merits in our analysis of his first assignment of error.
 {¶ 48} We likewise find no ineffective assistance in connection with Jones' challenge to the jury instructions and his sentence. He contends the trial court erred in instructing the jury that a not-guilty verdict was required if it found that the State failed to prove "all of the essential elements" of the crime of rape. He asserts that the trial court should have instructed the jury that a not-guilty verdict was required if it found that the State had failed to prove "any one of the essential elements." Having reviewed the full jury instructions, however, we believe it should have been reasonably apparent to the jury that it had to find each essential element proven beyond a reasonable doubt before it could convict Jones. Therefore, even if Jones' proposed wording technically might be more accurate, we are convinced that the trial court's instruction did not confuse the jury or affect the outcome of the trial. Accordingly, defense counsel did not provide ineffective assistance by failing to object.
 {¶ 49} With regard to Jones' sentence, he claims the trial court erred in ordering too lengthy a term of incarceration if he violates the conditions of his post-release control. In support, he contends the trial court made the following statement to him at his sentencing hearing: "* * * I must tell you, you will be on post-release control, and if you violate the terms of post-release control, you can be returned to the institution for half of the sentence or as long as five years." Jones argues that under Ohio's felony sentencing law he could only be returned to prison for half of his three-year sentence and not for five years and that his attorney provided ineffective assistance by failing to object to the misstatement.
 {¶ 50} We find no merit in Jones' argument. As an initial matter, he has failed to provide us with a sentencing transcript. Therefore, the record does not portray the error he alleges. Under such circumstances, we must presume the regularity of the proceedings below and reject his argument. State v. Bernhard,
Greene App. No. 2004 CA 66, 2005-Ohio-1052, at ¶ 17. Moreover, the trial court's sentencing entry correctly states that Jones could be returned to prison for up to fifty percent of his original sentence. Therefore, we find no ineffective assistance of counsel based on the lack of an objection to Jones' sentence.
 {¶ 51} Finally, we find no ineffective assistance arising from defense counsel's failure to request more specific offense dates in the verdict forms. We are unpersuaded that more specific dates were crucial to Jones' defense, particularly in light of his claim that he never had sex with A.B. We note too that Jones could have sought more specific dates by filing a motion for a bill of particulars (the absence of which he does not raise as an issue on appeal). Moreover, we find it improbable that Jones could have been prejudiced by the lack of more specific dates given his written confession to police that he had sex with A.B. five or six times. Accordingly, we overrule his fourth assignment of error.
 {¶ 52} In his fifth assignment of error, Jones maintains that his convictions are "against the sufficiency and/or manifest weight of the evidence." In support, he argues that the victim's testimony was contradictory and lacked credibility, that the State failed to produce any physical evidence to corroborate her allegations, and that his confession was the result of his mistaking A.B. for someone else with whom he had engaged in sexual intercourse.
 {¶ 53} Upon review, we find no merit in Jones' challenges to the weight and sufficiency of the evidence. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 54} Here Jones was convicted of violating R.C. §2907.02(A)(1) (b), which provides that no person shall engage in sexual conduct with another who is not the spouse of the offender when the other person is less than thirteen years of age regardless of whether the offender knows the other person's age. At trial, the State presented testimony from A.B. that Jones had placed his penis in her vagina on five occasions when she was twelve years old. A.B. also testified that she was not married to Jones. In addition, the State introduced into evidence Jones' written confession to police. Therein, Jones admitted that he "had sex with her about 5-6 time[s]." This evidence, if believed, would convince the average mind of his guilt beyond a reasonable doubt. Viewing the evidence in a light most favorable to the State, the prosecutor undoubtedly presented legally sufficient evidence to sustain his convictions.
 {¶ 55} Jones' manifest-weight-of-the-evidence argument is equally unpersuasive. When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 56} In the present case, the evidence does not weigh heavily against Jones' convictions. Although the victim's testimony contained minor discrepancies, she consistently testified about Jones having sexual intercourse with her on multiple occasions. Her testimony was corroborated by Jones' own admission to engaging in sexual intercourse with A.B. While Jones insists that he had A.B. confused with an older female named Teresa when he spoke to police, the jury reasonably could have found that this assertion lacked credibility. Jones testified at trial that when he provided his written statement to police, he really meant Teresa when he wrote A.B.'s name because he thought A.B. was Teresa, a female with whom he had engaged in sexual intercourse several times over a two-week period. He asserted that his written confession to police would be accurate if Teresa's name were substituted for A.B.'s name.
 {¶ 57} In his written confession, however, Jones stated that he stopped having sex with A.B. after he discovered that she was only twelve or thirteen years old. At trial, he denied that he stopped having sex with Teresa because of her age. Instead, he explained that his relationship with Teresa ended because she was leaving town. In his written statement, Jones also reported that he had engaged in sex with A.B. from approximately June 2003 until approximately February 2004. At trial, he testified that he only had sex with Teresa for a couple of weeks in June 2003. Therefore, the jury reasonably could have discredited Jones' claim that his references to A.B. in his written confession really were meant to be references to a female named Teresa. Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered witness credibility, we do not find that, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. As a result, we overrule Jones' fifth assignment of error
 {¶ 58} In his sixth assignment of error, Jones contends the trial court erred in providing an inaccurate jury instruction. This argument, which we touched upon in our analysis of Jones' fourth assignment of error, concerns the following instruction to the jury: "If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of rape in count one, then your verdict must be guilty of such count. However, if you find the State failed to prove beyond a reasonable doubt allof the essential elements of rape in count one, then your verdict must be not guilty to said count."[6] (Emphasis added).
 {¶ 59} On appeal, Jones claims the trial court should have instructed the jury that a not-guilty verdict was required if it found beyond a reasonable doubt that the State failed to proveany one of the essential elements of rape rather than all of the essential elements. Jones failed to bring this issue to the trial court's attention, however, and we find no plain error.
 {¶ 60} In State v. Edwards (July 2, 1991), Montgomery App. No. 12334, we rejected an argument identical to the one Jones raises here. In so doing, we reasoned: "From the entire context of the instructions, it should have been reasonably apparent to the jury that it had to find all of the essential elements beyond a reasonable doubt to convict Edwards. Accordingly, even if there was error, it would not have been so likely to have affected the result as to rise to the level of plain error." More recently, the Fifth District Court of Appeals reached the same conclusion in State v. Beyer, Coshocton App. No. 2005CA006,2005-Ohio-6191, at ¶ 19-21 (rejecting the argument Jones raises here). Based on Edwards and Beyer, we find no merit in Jones' argument. His sixth assignment of error is overruled.
 {¶ 61} In his seventh assignment of error, Jones claims the trial court erred in ordering too lengthy a term of incarceration if he violates the conditions of his post-release control. As we noted above, however, Jones has failed to provide us with a sentencing transcript. As a result, we must presume the regularity of the proceedings below and reject his argument.State v. Bernhard, Greene App. No. 2004 CA 66, 2005-Ohio-1052, at ¶ 17. His seventh assignment of error is overruled.
 {¶ 62} Having sustained Jones' second assignment of error in part, however, we hereby reverse the trial court's judgment and remand the cause for a factual determination as to whether the four additional rape charges in Jones' second indictment arose from the same facts as the original charge against him and, if so, whether the State knew such facts at the time of the initial charge. If the trial court answers both of these inquiries in the affirmative, the charges in the second indictment must be dismissed on speedy trial grounds.
Judgment reversed and cause remanded.
 . . . . . . . . . . .
Wolff, J., and Glasser, J., concur.
(Hon. George Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] The record is not entirely clear whether Jones was arrested on April 21, 2004, or April 22, 2004. For purposes of our analysis herein, however, the one day difference is immaterial.
[2] Although the State's appellate brief refers to six counts of rape, there were only five: one in the initial indictment and four in the second indictment.
[3] In rhetorical fashion, the State questions whether it had sufficient corroboration for the charges in the second indictment at the time of the first charge or whether A.B.'s version of events was consistent as to them.
[4] In Sanchez, the trial court overruled the defendant's motion to suppress, and he was convicted following a no-contest plea to trafficking in marijuana. He challenged the trial court's suppression ruling on appeal. Based on our review of the record, we held that a warrantless search of the defendant's motel room had been unlawful. We then found an unresolved factual issue as to whether marijuana discovered during a subsequent stop of the defendant's vehicle should have been suppressed on the basis that it was derivative of the unlawful motel room search or whether the officers would have stopped the vehicle and discovered the marijuana even if they had not searched the motel room. As a result, we reversed the defendant's conviction and remanded the cause to the trial court for a factual determination on the issue.
[5] In Monroe, the defendant was convicted of marijuana trafficking following a bench trial. In its written decision, the trial court failed to resolve a factual dispute as to whether the defendant's transfer of marijuana was a gift or a sale. Upon review, we determined that this unresolved factual issue was material. As a result, we reversed the defendant's conviction and remanded the cause for a factual determination as to whether the transaction charged in the indictment constituted a gift or a sale.
[6] The trial court gave this same instruction to the jury for each of the rape counts against Jones.