DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. A jury found Tammy L. Sandlin, defendant below and appellant herein, guilty of tampering with evidence in violation of R.C. 2921.12(A)(2), and forgery in violation of R.C.2913.31(A)(3).
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN PROHIBITING HER CROSS-EXAMINATION OF THE CHIEF COMPLAINING WITNESS ON MATTERS BEARING UPON MOTIVE, MISTAKE AND, ULTIMATELY, CREDIBILITY, THEREBY DENYING TO HER THE RIGHT TO *Page 2 
CONFRONT HER ACCUSER, A RIGHT GUARANTEED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."
 SECOND ASSIGNMENT OF ERROR:
 "THE CUMULATIVE EFFECT OF THE ERRORS OF THE TRIAL COURT IN RESTRICTING THE DEFENDANT'S CROSS-EXAMINATION OF THE CHIEF COMPLAINING WITNESS AND IN RELATED RULINGS ON THE ADMISSION OF EVIDENCE, DENIED TO THE DEFENDANT A MEANINGFUL OPPORTUNITY TO PRESENT A COMPLETE DEFENSE."
 THIRD ASSIGNMENT OF ERROR:
 "THE DEFENDANT'S CONVICTION UPON COUNT TWO OF THE INDICTMENT IS VOID AB INITIO FOR THE REASON THAT THE WORDS CONTAINED IN COUNT TWO ARE INSUFFICIENT TO GIVE NOTICE OF ALL OF THE ELEMENTS OF AN OFFENSE UNDER EITHER THE SUBSECTION SPECIFIED IN THE INDICTMENT, [R.C.] 2913.31(A), OR ANY OTHER SUBSECTION OF THE FORGERY STATUTE."
 {¶ 3} In 1994, appellant retained attorney Jeffrey Hoskins to represent her in a divorce. After a number of years and as her legal expenses mounted, appellant and Hoskins arranged for her to work off fees by performing secretarial work at Hoskins' law practice. Four years later, appellant became Hoskins' full-time secretary and subsequently followed him to the Highland Common Pleas Court after the 2002 election.
 {¶ 4} Due to budgetary problems in 2005, various Highland County department heads met to discuss ways to either increase revenue or decrease expenses. One proposal was to collect court costs that had been assessed, but never collected, in *Page 3 
various civil actions. Subsequently, the Highland County Clerk of Courts generated a list of court cost debtors who owed in excess of $300. Appellant's name appeared on that list.
 {¶ 5} Consequently, a court cost bill was delivered to appellant at her courthouse office. Questioning her liability for those costs, appellant requested to see her divorce court file. The court file was retrieved and delivered to appellant's office. Appellant apparently reviewed the file and returned it later that same day. Appellant thereupon claimed that a mistake appeared in the file with respect to a Magistrate's Decision and a subsequent judgment entry that adopted that decision.
 {¶ 6} Specifically, a February 11, 2000 judgment specified that the trial court approved a prior Magistrate's Decision and, as part of that decision, ordered Tammy Lykins (appellant) to pay court costs. However, the Magistrates's Decision on which that judgment was based read differently. The original (printed) version of the decision comported with the judgment and specified that the "plaintiff" pay the specified costs of the proceeding.[1] Interestingly, the printed word "plaintiff" in the Magistrate's Decision had a line drawn through it and the word "parties" hand-written in its place. Furthermore, the initials "C.W." were written above the interlineation.[2] Appellant then argued that the trial court's judgment entry incorrectly reflected the Magistrate's Decision as to allocation of costs, and if costs were equally divided between her and her ex-husband (now deceased), as it so appeared on the interlineated version of that *Page 4 
decision, she would no longer be liable for court costs.[3]
 {¶ 7} The Clerk's office forwarded the file to Magistrate Cynthia Williams for review. Magistrate Williams quickly recognized that the interlineation and initials were not in her handwriting and she contacted counsel who represented appellant's ex-husband and asked to see his copy of the 1999 decision.[4] That copy revealed the original assessment of costs to appellant without any interlineation. The magistrate then reviewed the 1999 hearing tape and this, too, confirmed that appellant was ordered to pay costs. After confronting appellant and speaking with Judge Hoskins, Magistrate Williams contacted the authorities.
 {¶ 8} On June 7, 2005, the Highland County Grand Jury returned an indictment charging appellant with tampering with evidence and forgery. She pled not guilty to both charges and the matter came on for jury trial in September 2005.
 {¶ 9} At trial, Magistrate Williams testified that the initials and the interlineation on the 1999 decision were not of her making. She further related that when she confronted appellant and told her that the changes on the Magistrate Decision were not in her handwriting, appellant blurted out "its not my writing" and immediately offered to pay the court costs. Highland County Sheriff's Deputies Carol Ann Purvis and Keith Brown testified they processed appellant at the Sheriff's Office after her indictment and she, in essence, confessed to the crimes and also asserted that she had been given "permission" to alter the document. *Page 5 
 {¶ 10} Appellant testified in her own defense and denied that she altered the 1999 Magistrate's Decision. She also denied making the comments attributed to her by Deputies Purvis and Brown and claimed that some of Magistrate Williams' testimony was false.
 {¶ 11} The jury found appellant guilty on both counts. The trial court did not enter a separate judgment on those verdicts but, on November 14, 2005 sentenced appellant to serve thirty days in county jail, pay a $1,100 fine and five years of community control. Appellant appealed that judgment, but we dismissed the case for lack of a final order because the judgment did not comply with Crim.R. 32(C). See State v.Sandlin, Highland App. No. 05CA23, 2006-Ohio-5021. The trial court subsequently filed a judgment of conviction and sentence that did comply with the rule and this appeal followed.
 I {¶ 12} We first consider, out of order, appellant's third assignment of error. Appellant asserts that her forgery conviction is void abinitio because the count of the indictment that charged that offense failed to specify all the essential elements of the crime. We disagree with appellant.
 {¶ 13} Our analysis begins with the forgery statute, R.C.2913.31(A)(3), which provides:
 "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 * * *
 "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged." *Page 6 
 {¶ 14} We compare the statute's language to count two of the June 7, 2005 indictment which provides:
 "On or about the period of time of March 29, 2005 through and including April 1, 2005, in Highland County, Ohio, Tammy L. Sandlin, did with purpose to defraud, or knowing that she was facilitating a fraud, utter, or possess with purpose to utter, a writing, to wit: A magistrate's recommendation under Case No. 94-DR 383 from the Court of Common Pleas, Highland County, Ohio, Domestic Relations Division, filed for records [sic] on November 15, 1999, so that it purported to be genuine when it was actually spurious, or to be a copy of an original when no such original existed,, [sic] in violation of Section 2913.31(A)(3) ORC, and against the peace and dignity of the State of Ohio[.]" (Emphasis added.)
Comparing this language to R.C. 2913.31(A)(3), it is clear that count two of the indictment repeats most of the elements of the crime of forgery. The indictment alleges appellant acted "with purpose to defraud" and did "utter" a writing. However, count two of the indictment departs from the statute's exact language is the statement that the writing "purported to be genuine when it was actually spurious," rather than specifying that appellant knew the writing "to have been forged." Appellant seizes on this distinction in language and argues that the indictment failed to set out all of the essential elements of the crime. Again, we are not persuaded.
 {¶ 15} Appellant cites no authority for the proposition that the language in an indictment must be a rote recitation of statutory language. To the contrary, Crim.R. 7(B) provides in pertinent part:
 "The indictment shall . . . contain a statement that the defendant has committed a public offense specified in the indictment. * * * The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." (Emphasis added.) *Page 7 
Also see e.g. State v. Carnes, Brown App. No. CA2005-01-1,2006-Ohio-2134, at ¶ 9; State v. Biggers, Morgan App. No. 05CA1,2005-Ohio-5956, at ¶ 35; State v. Smith (Mar 15, 1999), Scioto App. No. 97CA2547.
 {¶ 16} The pivotal issue is whether the word "spurious," as used in the indictment, sufficiently placed appellant on notice that she was being charged with uttering a writing that she knew to be forged. We conclude that it did. As appellee points out, the word "spurious" means "[constituting a forgery." The American Heritage Dictionary (2nd College Ed. 1985) 1183. In our view, the allegation that appellant uttered a writing "purported to be genuine when it was actually spurious" is synonymous with alleging that she uttered a writing that she knew "to be forged."
 {¶ 17} We also note that appellant does not actually argue that she lacked notice of the essential elements of the offense. She does not cite an example of how she may have been disadvantaged by the indictment's wording, nor does she specify how she would have proceeded differently if the indictment had stated that she knew the writing "to have been forged" rather than being "spurious." Our review of the record reveals that everyone involved was clearly aware of the nature of the offense as appellee presented evidence that appellant forged Magistrate Cynthia Williams' initials to the interlineated decision, and the defense presented evidence that she did not.
 {¶ 18} In light of our conclusion that the word "spurious" as used in the indictment is tantamount to the word "forged" as it appears in R.C.2913.31(A)(3), and considering that appellant has not shown that she lacked notice of the essential elements of the offense with which she was charged, we may not reverse her conviction on the basis of a hypertechnical reading of the indictment's language. *Page 8 
 {¶ 19} Accordingly, we hereby overrule appellant's third assignment of error.
 II {¶ 20} We now turn to appellant's first and second assignments of error which we consider together because they both address the extent to which the trial court permitted defense counsel to cross-examine Magistrate Williams. Appellant points out that she attempted to cross-examine Magistrate Williams concerning (1) the propriety of assessing court costs to appellant in the 1999 decision, despite appellant being the victorious party in that proceeding, and (2) Magistrate Williams' attempt to intervene with the special prosecutor and to stop the criminal proceedings against appellant. The trial court limited the extent to which appellant could cross-examine Magistrate Williams on these issues, however, and appellant now argues that this violated her constitutional rights. We disagree.
 {¶ 21} Our analysis begins with the Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution which guarantee criminal defendants the right to confront witnesses at trial. Implicit in those guarantees is the right to cross-examine adverse witnesses. See State v. Williams (1983), 4 Ohio St.3d 74, 75,446 N.E.2d 779; State v. Miller (1975), 42 Ohio St.2d 102, 104,326 N.E.2d 259. The right to confront and cross-examine a witness is not unlimited, however. Delaware v. Van Arsdall (1986), 475 U.S. 673, 679,89 L.Ed.2d 674, 106 S.Ct. 1431.
 {¶ 22} Courts retain wide latitude insofar as the Confrontation Clause is concerned and may impose reasonable limits on cross-examination based on concerns about, inter alia, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or marginally relevant. Id. Thus, the Confrontation Clause *Page 9 
guarantees an opportunity for effective cross-examination, not examination that is effective in whatever way, and to whatever extent, defense might wish. Id., quoting Delaware v. Fensterer (1985),474 U.S. 15, 20, 88 L.Ed.2d 15, 106 S.Ct. 292. Furthermore, while cross-examination itself is a matter of right, the extent to which cross-examination is permitted with respect to a particular subject of inquiry lies within the sound discretion of the trial court. SeeState v. Green (1993), 66 Ohio St.3d 141, 147, 609 N.E.2d 1253; also seeAlford v. United States (1931), 282 U.S. 687, 691, 75 L.Ed.2d 624,51 S.Ct. 218. Generally, a court's decision regarding allowable scope of cross-examination will not be reversed absent an abuse of discretion.State v. Schofeild, Washington App. Nos. 01CA36 02CA13, 2002-Ohio-6945, at ¶ 150.
 {¶ 23} At this juncture we note that an abuse of discretion is generally more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable.State v. Herring (2002), 94 Ohio St.3d 246, 255, 762 N.E.2d 940;State v. Clark (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331. In other words, an abuse of discretion means that the result is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance of judgment, and not the exercise of reason but, instead, passion or bias. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256,662 N.E.2d 1, 3. Appellate courts are further cautioned that they should not merely substitute their own judgment on these matters for that of the trial court. State ex re l. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181.
 {¶ 24} In the case sub judice, we fully agree with the trial court that whether the *Page 10 
1999 court costs were correctly assessed was irrelevant to this case. If those costs were incorrectly assessed, the remedy was to object to the Magistrate's Decision, prosecute an appeal of the trial court's judgment or possibly request relief from that judgment. In the instant case, the only issues were (1) whether appellant interlineated the Magistrate's Decision to alter the court costs assessment, and (2) whether appellant forged Magistrate Williams' initials to the interlineation.
 {¶ 25} Appellant couches her argument in a theory that Magistrate Williams may have realized that she incorrectly assessed court costs to appellant, later changed the document herself, then forgot that she made the interlineation. We reject this argument for two reasons.
 {¶ 26} First, we find no evidence to support that theory. Second, the uncontroverted evidence flies in the face of such an argument. Magistrate Williams was emphatic that she did not make the interlineation and the initials above the interlineation were not in her handwriting.[5] She also stated that she received a copy of her 1999 decision in the files of one of the attorneys and that she reviewed the hearing transcript, both of which indicated that costs were assessed to appellant.[6]
 {¶ 27} We also point out that, even if we agree with appellant, for purposes of *Page 11 
argument, that the trial court improperly limited cross-examination of Magistrate Williams on this subject, the issue of court costs was nevertheless discussed several times. This issue arose during other portions of Magistrate Williams' testimony, as well as the testimony of Bill Armintrout (counsel who represented appellant's husband during the divorce). Trial courts have the discretion to exclude needless repetition of even relevant evidence. Evid.R. 403(B). In any event, given that the propriety of assessing court costs to appellant in 1999 was irrelevant, we find no abuse of discretion in limiting the amount of cross-examination on that issue.
 {¶ 28} We are equally unpersuaded that the trial court erred in limiting the extent to which Magistrate Williams could be cross-examined about her attempt to intervene and to prevent appellant's prosecution for these crimes. To begin, although appellant characterizes Magistrate Williams' action as being precipitated by a realization "that she may have made a mistake in failing to recognize the correction as her own," we find no evidence in the record to support that characterization. Magistrate Williams was
emphatic that the initials above the interlineation were not hers. The reason she may have attempted to intervene on appellant's behalf to prevent the criminal prosecution was because she "like[d] Tammy and didn't want to see anything [bad] happen to Tammy."
 {¶ 29} Of course, Magistrate Williams' wishes as to whether appellee prosecuted the criminal case are irrelevant. Violations of criminal law are offenses against the State of Ohio. Stebelton v. Haskins (1964),177 Ohio St. 52, 54, 201 N.E.2d 884. Any resulting prosecution is brought on behalf of the State of Ohio, not the victim. Breaker v. State (1921),103 Ohio St. 670, 671, 134 N.E.2d 479. The victim of the crime is not a *Page 12 
party who can halt a prosecution whenever she desires. State v.Wright (Jul. 29, 1994), Scioto App. No. 93CA2110; State v. McClain (Mar. 31, 1994), Vinton App. No. 482 (Stephenson, J. Concurring).
 {¶ 30} Although Magistrate Williams is not technically the victim in this case, the same principle applies. Appellant's crimes were committed against the State of Ohio. The fact Magistrate Williams knew and liked appellant, and did not want to see her get into trouble, is irrelevant. Thus, we find no error in the trial court's decision to exclude this evidence.
 {¶ 31} Finally, even if we accept the premise that the trial court erred by excluding this testimony, we conclude that such error would have been harmless. See Crim.R. 52(A). The uncontroverted evidence showed that the 1999 Magistrate's Decision had been altered and that someone forged Magistrate Williams' initials to the alteration. The pivotal question was who performed those acts.
 {¶ 32} Although appellant denied responsibility, Deputies Purvis and Brown testified that she essentially confessed to the crimes during her processing. Testimony from various members of the Clerk's office placed the file with appellant before the discrepancy was brought to Magistrate Williams' attention. Furthermore, Magistrate Williams testified that when she told appellant that the interlineation was not in her handwriting, appellant immediately denied that she had any involvement and offered to pay court costs right away. Obviously, the jury would have viewed this evidence with a suspicious eye.
 {¶ 33} Therefore, in light of all of the evidence that points to appellant as the person who tampered with the court file and forged Magistrate Williams' initials, the *Page 13 
outcome of this case would not have been different had the jury heard more evidence about improper assessment of court costs or that Magistrate Williams preferred not to see appellant prosecuted. For these reasons, we find that the trial court did not abuse its discretion by restricting appellant's cross-examination of the Magistrate on these issues. Thus, we hereby overrule appellant's first and second assignments of error.
 {¶ 34} Accordingly, having reviewed all errors assigned and argued in the brief, and having found merit in none, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. McFarland, J.: Concur in Judgment Opinion
[1] Appellant was the plaintiff in the divorce action against her ex-husband.
[2] The initials "C.W." generally referred to the Magistrate Cynthia Williams.
[3] Appellant had in the past apparently made partial payments on the court costs.
[4] Magistrate Williams also asked Judge Hoskins if she could see the copy of the decision from his file, but he closed his law office before coming on the bench and he returned all files to his ex-clients.
[5] Magistrate Williams explained that when she initialed entries, she always used a continuous "swoop" to write the "C" and "W" without taking her hand off the paper. Also, she always used lower case letters. By contrast, a space appears between the "C" and "W" above the interlineation at issue in this case and the initials are in capital letters. Indeed, the differences between these two modes of initialing are clearly evident in Exhibit B.
[6] Claudia Klein, Chief Deputy Clerk of Courts in Highland County, testified that Magistrate Williams never edited entries after they were filed. Thus, if appellant's theory of the case was correct, the copy of the decision in possession of counsel would have depicted the interlineation. It did not. *Page 1