[Cite as *State v. Lykins*, 2019-Ohio-3316.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 18CA1079 |
| vs. | : | |
| MICHAEL LYKINS, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for Appellant.[1]

David Kelley, Adams County Prosecuting Attorney, and Kris Blanton, Adams County Assistant Prosecuting Attorney, West Union, Ohio, for Appellee.

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-12-19
ABELE, J.

{¶ 1} This is an appeal from an Adams County Common Pleas Court judgment of conviction and sentence. The jury found Michael Lykins, defendant below and appellant herein, guilty of three counts of rape, in violation of R.C. 2907.02(A)(2). The trial court sentenced appellant to serve a total of thirty years in prison. Appellant assigns the following errors for review:

_____

[1] Different counsel represented appellant during the trial court proceedings.

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN PREVENTING APPELLANT FROM PRESENTING EVIDENCE REGARDING THE FACT THAT THE ALLEGED VICTIM IN THE INSTANT CASE WAS POSITIVE FOR A SEXUALLY TRANSMITTED DISEASE THAT HE DID NOT HAVE AND COULD NOT HAVE PASSED ON TO THE ALLEGED VICTIM."

SECOND ASSIGNMENT OF ERROR:

"DEFENDANT'S CONVICTIONS FOR THREE COUNTS OF RAPE WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT IMPROPERLY SENTENCED APPELLANT TO CONSECUTIVE PRISON TERMS."

FOURTH ASSIGNMENT OF ERROR:

"APPELLANT'S COUNSEL WAS INEFFECTIVE FOR (A) FAILING TO PRESENT EXPERT MEDICAL TESTIMONY REGARDING THE ISSUE OF THE ALLEGED VICTIM'S CHLAMYDIA AND (B) FAILING TO OBJECT TO IMPROPER HEARSAY EVIDENCE."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN LIMITING APPELLANT'S CROSS EXAMINATION OF KENNY DICK REGARDING ISSUES MATERIAL TO HIS DEFENSE."

SIXTH ASSIGNMENT OF ERROR:

"CUMULATIVE ERRORS COMMITTED DURING APPELLANT'S TRIAL DEPRIVED HIM OF A FAIR TRIAL

AND REQUIRE A REVERSAL OF HIS CONVICTIONS."

{¶ 2} In December 2015, the victim informed a school guidance counselor that appellant and the victim's mother had engaged in inappropriate sexual contact with the victim. The victim later was interviewed at the Mayerson Center at Cincinnati Children's Hospital, a child advocacy center. During the interview, the child disclosed the nature of the sexual contact. An Adams County grand jury subsequently returned an indictment that charged appellant with three counts of rape, in violation of R.C. 2907.02(A)(2) and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1).

{¶ 3} After appellant's indictment, appellant filed a motion that requested the court to schedule a hearing to consider his request to admit evidence regarding the victim's sexual activity. Appellant asserted that the victim tested positive for chlamydia in February 2016 and, that in March 2016, appellant tested negative. Appellant argued that evidence that the victim tested positive for chlamydia and that he did not helps to illustrate that he did not rape the victim.

{¶ 4} The state, however, asserted that appellant's medical records show that he tested negative for Chlamydia on March 1, 2016 and that in December 23, 2015, appellant was treated with an antibiotic used to treat bacterial infections, including chlamydia. The state also alleged that evidence that the victim tested positive for chlamydia fifteen months after the conduct alleged in the indictment is not relevant evidence.

{¶ 5} At the rape-shield hearing, the trial court questioned both parties whether either had medical testimony that would help the court determine whether the victim's February 2016 chlamydia diagnosis would be relevant to showing that appellant could not have been the source of the victim's sexually transmitted disease. Both defense counsel and the prosecutor stated that

they did not intend to present medical testimony. The court then summarized what it believed to be the defense's position: (1) if the victim had chlamydia in February 2016, then she also had it in 2014, when appellant allegedly raped her, and she would have transmitted the disease to appellant; and (2) appellant's March 2016 negative test result shows that he could not have had sexual contact with the victim during 2014; otherwise, he would have tested positive for chlamydia. Appellant's counsel agreed with the court's summary of his argument.

{¶ 6} The court then inquired whether evidence that the victim had sexual contact with an unrelated third person after the dates of the rapes alleged in the indictment would be relevant to showing that the victim contracted chlamydia from a third person after she no longer had been having sexual contact with appellant.

{¶ 7} Defense counsel responded that, even though additional sexual contact between the victim and appellant had not been charged in the indictment, the victim disclosed during her Mayerson Center interview that she continued to have sexual contact with appellant "all the way up until two weeks prior to her disclosure." Defense counsel thus stated that he believed the prosecution intended to introduce evidence that the victim continued to have sexual contact with appellant up until two weeks before her disclosure. He thus stated that evidence of recent sexual contact "brings us closer in time to this whole event as it concerns [appellant]."

{¶ 8} The prosecutor agreed that the victim alleged that she and appellant continued to engage in sexual contact somewhere between two weeks and two months before the victim disclosed the sexual activity to the school guidance counselor. The prosecutor further noted, however, that appellant's medical records show that he was treated with an antibiotic and that the antibiotic may have cured any chlamydia from which appellant might have been suffering.

{¶ 9}    The trial court determined that, although the victim's chlamydia diagnosis may be relevant, the probative value did not outweigh the prejudicial effect.   The court noted that because the evidence may confuse the jury, rather than enrich the jury's understanding, appellant could not introduce the victim's chlamydia diagnosis into evidence at trial.

{¶ 10} At the jury trial, Adams County Investigator Kenneth Dick testified that on December 2, 2015, Adams County Children Services informed him that children services had received a referral from the victim's school guidance counselor.   Based upon that information, Dick scheduled the victim to be interviewed at the Mayerson Center at Cincinnati Children's Hospital.

{¶ 11} The investigator explained that his investigation into the alleged conduct was limited due to the passage of time.   He stated that he could not collect any physical evidence because the incident had occurred over one year earlier and that appellant had moved to a new residence since that time.

{¶ 12} On cross-examination, Investigator Dick explained that when the incident occurred, the victim lived with three other female minors.   Dick reported that he did not interview any of the individuals who lived in the home with the victim at the time of the alleged rapes to attempt to corroborate the victim's allegations.   Dick also revealed that two of the other female minors had made sexual abuse allegations against an uncle.

{¶ 13} The victim testified that in July 2014, she lived with her mother, appellant (her mother's boyfriend), her brother and sister, and appellant's two daughters.   The victim explained the circumstances surrounding the first rape as follows.   In July 2014, shortly after the victim's thirteenth birthday, the victim's mother gave the victim some lingerie to wear and told the victim

"that we were going to try something."   The mother also gave the victim beer and vodka.   The mother told the victim to shower and to "shave everything."   The mother later told the victim to lie on the couch and remove her underwear.   Appellant then laid on top of the victim and placed his penis in her vagina.

{¶ 14} The victim stated that the next two incidents occurred around Halloween 2014. The victim explained that the mother and appellant told the victim to go to their bedroom.   Her mother told the victim to get undressed and to lie on the bed.   Appellant then placed his penis inside the victim's vagina and held his hands on her biceps.   Appellant also placed his fingers inside the victim's vagina.   The victim stated that she listened to her mother and appellant because she was afraid to disobey them.

{¶ 15} The victim explained that in December 2015, she reported the allegations to her school guidance counselor.   The victim recognized that a couple of months before she made her allegations, two of the other female members of her household made a sexual assault report against an uncle.   The victim further stated that, shortly before she made her allegations, she talked to her mother about moving out of appellant's house.   The victim stated that she now lives with her grandmother and grandfather.

{¶ 16} Social Worker Andrea Powers testified that she conducted a forensic interview of the victim at the Mayerson Center.   During the interview, the victim stated that her "mom and her [mom's] boyfriend raped" her shortly after she turned thirteen years of age.   After she interviewed the victim, Powers recommended that the victim "seek counseling, trauma based if available."   She also recommended that the victim follow up with medical care.   After the state rested, appellant filed a Crim.R. 29(A) motion for judgment of acquittal.   The court granted it

with respect to one of the four counts of rape.

{¶ 17} In his defense, appellant presented testimony from Jacinda Fite, his daughter. Fite stated that she lived with appellant from December 2013 through November 2014 and did not see appellant act inappropriately with the victim. She also did not observe any changes in the victim's behavior during the time she lived in the home.

{¶ 18} Fite indicated that the victim enjoyed spending time at the home of F.S., the mother's step-parent (and the person whom the victim referred to as her grandmother). Fite stated that the victim's family and F.S.'s family shared a good relationship until the two female minors made allegations of sexual abuse against an uncle who lived with F.S. Fite testified that after the allegations, the victim no longer was permitted to go to F.S.'s home.

{¶ 19} After the court submitted the case to the jury, the jury informed the court that it was having difficulty reaching a verdict. The court gave the jury an instruction, and the jury returned to deliberate the next day. After two hours, the jury asked the court what would happen if the jury could not reach a verdict. The court then advised the foreperson to return to the deliberation room to decide whether a verdict could be reached. Shortly thereafter, the jury returned guilty verdicts.

{¶ 20} On October 25, 2018, the trial court sentenced appellant to serve (1) eleven years in prison on count one, (2) eleven years in prison on count three, and (3) eight years in prison on count four. The court further ordered the sentences be served consecutively to one another for a total term of thirty years in prison. This appeal followed.

I

{¶ 21} In his first assignment of error, appellant asserts that the trial court abused its

discretion by refusing to allow him to introduce evidence that (1) the victim tested positive for chlamydia in February 2016, approximately two months after her disclosure, and (2) that appellant tested negative for chlamydia in March 2016.

{¶ 22} The state, however, argues that the proffered evidence would have served only to impeach the victim's credibility. The state contends that the evidence would not show that appellant did not commit the alleged acts, but rather, would show that the victim had sexual contact with others.

{¶ 23} Generally, appellate courts review trial court evidentiary decisions, including decisions regarding the admissibility of a victim's sexual conduct, under the abuse-of-discretion standard of review. *State v. Minton*, 4th Dist. Adams No. 15CA1006, 2016-Ohio-5427, 69 N.E.3d 1108, ¶ 19, citing *State v. Nguyen*, 4th Dist. Athens No. 12CA14, 2013-Ohio-3170, ¶ 44. An "abuse of discretion" means that the court acted in an "'unreasonable, arbitrary, or unconscionable'" manner or employed "'a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008–Ohio–4493, 894 N.E.2d 671, ¶ 23. Moreover, a trial court generally abuses its discretion when it fails to engage in a "'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Additionally, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34.

{¶ 24} Although appellate courts ordinarily review trial court evidentiary decision using

the abuse-of-discretion standard of review, appellate courts review claims that the trial court's evidentiary decision denied a defendant of his right to confront witnesses under the Sixth Amendment using the de-novo standard of review. *Minton* at ¶ 19, *Nguyen* at ¶ 44, citing *State v. Osman*, 4th Dist. Athens No. 09CA36, 2011-Ohio-4626, ¶ 78.

{¶ 25} R.C. 2907.02(D), Ohio's "rape shield law," governs the introduction of evidence regarding a victim's sexual history in rape prosecutions. The statute prohibits any evidence of the victim's sexual history "unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender." R.C. 2907.02(D); *accord State v. Ferguson*, 5 Ohio St.3d 160, 164, 450 N.E.2d 265, 268, 5 O.B.R. 380 (1983) (reciting statute and explaining that "[e]vidence of the victim's prior sexual activity with a person other than the defendant is inadmissible unless it relates to the 'origin of semen, pregnancy, or disease * * *'"). Thus, the statute does not permit evidence of a victim's sexual history when offered solely to impeach the victim's credibility. *Minton* at ¶ 30, citing *Ferguson*, paragraph two of the syllabus. In addition, the evidence regarding the victim's sexual history must be "material to a fact at issue in the case" and "its inflammatory or prejudicial nature [must] not outweigh its probative value." *Id.* "The key to assessing the probative value of the excluded evidence is its relevancy to the matters as proof of which it is offered." *State v. Gardner*, 59 Ohio St.2d 14, 18, 391 N.E.2d 337, 340–41 (1979).

{¶ 26} In the case sub judice, appellant sought to introduce evidence regarding the victim's chlamydia diagnosis made two months after she reported her rape allegations. Appellant contends that this evidence is relevant to the victim's credibility and to show that he was not the source of her disease. Appellant observes that he tested negative for chlamydia in

March 2016, the month after the victim's positive result. Appellant thus claims that evidence regarding the victim's chlamydia diagnosis would have helped establish that he did not have sexual contact with the victim.

{¶ 27} We, however, do not agree with appellant that the victim's 2016 chlamydia diagnosis would have helped him to establish that he did not have sexual contact with the victim. At trial, the primary fact in issue was whether appellant raped the victim during the year 2014. None of the evidence presented during the rape-shield hearing indicates that the victim's 2016 chlamydia diagnosis has relevance to whether appellant raped her in 2014. Thus, this evidence has little probative value to proving the facts actually in issue at trial. *See State v. Jones*, 2nd Dist. Montgomery No. 20862, 2006-Ohio-2640, 2006 WL 1461031, ¶ 10 (concluding that victim's positive test result for sexually-transmitted disease not probative when test result did not correlate to time of sexual contact with defendant); *see generally State v. Gaffin*, 4th Dist. Adams No. 17CA1057, 2019-Ohio-291, 2019 WL 384573, ¶ 71, appeal not allowed, 155 Ohio St.3d 1457, 2019-Ohio-1759, 122 N.E.3d 217 (noting that evidence may be too remote in time to have probative value).

{¶ 28} We note, however, that both the prosecutor and defense counsel appeared to agree that the victim and appellant continued to engage in sexual contact even after the dates alleged in the indictment. The prosecutor believed that the sexual contact continued through October 2015, while defense counsel believed it continued through late November 2015. Defense counsel thus asserted at the rape shield hearing that the victim's February 2016 positive chlamydia diagnosis and appellant's March 2016 negative chlamydia diagnosis shows that the victim and appellant could not have engaged in any sexual contact.

{¶ 29} We also observe that both parties further agreed that appellant received an antibiotic in late 2015. The prosecutor indicated that the antibiotic may have cured any chlamydia from which appellant may have been suffering, and thus led to his March 2016 negative test result. Under these circumstances, we are unable to conclude that the trial court abused its discretion by preventing appellant from introducing evidence regarding the victim's chlamydia diagnosis.

{¶ 30} Moreover, to the extent that appellant contends that the evidence would have been relevant to the victim's credibility, we point out that the rape-shield statute does not allow a defendant to introduce evidence regarding a victim's sexual activity when the sole purpose is to impeach the victim. *Ferguson*, paragraph two of the syllabus. Consequently, the evidence is not admissible under the rape shield statute.

{¶ 31} Under certain circumstances, however, evidence that the rape-shield law prohibits may be admissible in order to protect a defendant's constitutional right to confront the witnesses against him. *State v. Williams*, 21 Ohio St.3d 33, 35, 487 N.E.2d 560 (1986) (stating that "in some circumstances evidence which the rape shield law would render inadmissible would nevertheless be admitted in furtherance of the defendant's constitutional rights"). In limited situations, a defendant's confrontation rights may be "'paramount'" to the state's interests underlying a rape shield statute. *Williams* at 35, quoting *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1947). To determine whether the rape-shield law is constitutionally applied in a specific instance the court must, "* * * balance the state interest which the statute is designed to protect against the probative value of the excluded evidence." *Gardner*, 59 Ohio St.2d at 17.

{¶ 32} The rape shield statute is designed to promote "[s]everal legitimate state interests":

> First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process.

*Gardner*, 59 Ohio St.2d at 17–18.

{¶ 33} In *Williams*, for instance, the court determined that although the rape shield statute prohibited evidence that the victim had sex with another man other than the defendant, the evidence nevertheless was admissible in order to protect the defendant's confrontation rights. In *Williams*, the victim testified at trial that she does not have sex with men because she is "gay." On cross-examination, the victim agreed that she offered the testimony that she does not have sex with men in order to show that she would not consent to having sex with a man, such as the defendant. The defendant then attempted to introduce testimony from a male witness who stated that he had sex with the victim. The state objected, and the trial court ordered the testimony stricken from the record. The defendant also proffered testimony from another witness who would have testified that the victim is a prostitute and that the defendant is her "pimp." The jury ultimately convicted the defendant of rape, and the defendant appealed.

{¶ 34} The appellate court reversed the defendant's conviction and ordered the trial court to hold a new trial so as to allow the testimony concerning the victim's sexual history. The state then appealed to the Ohio Supreme Court.

{¶ 35} The Ohio Supreme Court affirmed the appellate court's judgment and, in doing so, first observed that the proffered evidence "is undeniably inadmissible under the rape shield law." *Williams*, 21 Ohio St.3d at 34. The court nevertheless ruled that prohibiting the evidence violated the defendant's right to confront the witnesses against him. The court noted that "[t]he contested issue" in the case was whether the victim consented to having sex with the defendant and that the proffered evidence "directly refute[d]" the victim's testimony "that she never consents to sex with men." *Id.* The court thus concluded that the "evidence [was] submitted for more than mere impeachment of a witness' credibility." The court elaborated:

> The victim's credibility is indeed being impeached; however, the proffered evidence has a more important purpose, which is to negate the implied establishment of an element of the crime charged. For this reason, the probative value of the testimony outweighs any interest the state has in exclusion.

*Id.* at 36.

{¶ 36} In the case at bar, we do not believe that prohibiting evidence regarding the victim's chlamydia diagnosis violates the defendant's confrontation rights. As we explained above, the 2016 chlamydia diagnosis does not help to show that appellant did not engage in sexual contact with the victim during the year 2014. The medical diagnosis and the sexual acts alleged in the indictment did not occur around the same time. Therefore, the 2016 medical diagnosis has little probative value regarding the rape incidents alleged in the indictment. Consequently, we do not believe that the trial court's decision to prohibit appellant from introducing evidence regarding the victim's medical diagnosis violated appellant's right to confront the witnesses against him.

{¶ 37} Accordingly, based upon the foregoing reasons, we overrule appellant's first

assignment of error.

## II

{¶ 38} In his second assignment of error, appellant asserts that his rape convictions are against the manifest weight of the evidence and that sufficient evidence does not support his rape convictions for the following reasons: (1) the victim offered the only direct evidence regarding the offenses; (2) the state did not present any corroborating witnesses; (3) the state did not offer any physical evidence to establish that appellant and the victim engaged in sexual contact; (4) the victim waited more than one year before she reported the alleged rapes; and (5) the victim had a motive to lie. Appellant further contends that the evidence fails to show that he committed three separate offenses of rape.

{¶ 39} The state asserts that the victim's testimony constitutes competent and credible evidence that appellant committed three counts of rape. The state alleges that the victim testified to the following incidents: (1) shortly after her thirteenth birthday, appellant placed his penis inside her vagina; (2) around Halloween of 2014, appellant again placed his penis inside her vagina; and (3) on another occasion near Halloween of 2014, appellant inserted his fingers into the victim's vagina.

{¶ 40} We initially observe that "sufficiency" and "manifest weight" present two distinct legal concepts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 23 (stating that "sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), syllabus. A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *Thompkins*,

78 Ohio St.3d at 386. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶ 41} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 42} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387. "The question to be answered when a manifest-weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a

reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus. A court that is considering a manifest-weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact

finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

**{¶ 43}** Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., Eley. Accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when ""the greater amount of credible evidence"" supports it). A court may reverse a judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶ 328. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717; *accord State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

**{¶ 44}** We also observe that when an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that

sufficient evidence supports the conviction. *E.g., State v. Waller*, 4th Dist. Adams No. 17CA1044, 2018-Ohio-2014, 2018 WL 2376483, ¶ 30. Thus, a determination that the weight of the evidence supports a conviction is also dispositive of the issue of sufficiency. *Id.*

{¶ 45} In the case at bar, after our review of the record we do not believe that appellant's rape convictions are against the manifest weight of the evidence. Instead, the record contains substantial competent and credible evidence to support the essential elements of rape.

{¶ 46} R.C. 2907.02(A)(2) sets forth the offenses of rape as charged in the indictment and states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 47} In the case sub judice, the victim testified that appellant purposely compelled her to engage in sexual conduct with him by force or threat of force. The victim stated that shortly after her thirteenth birthday, appellant placed his penis inside her vagina. Around Halloween 2014, appellant placed his fingers inside the victim's vagina, and he also inserted his penis inside her vagina. The victim further stated that she felt compelled to obey appellant and was afraid. The victim also explained that on one of the occasions, appellant placed his hands on her biceps in a manner that made her feel that she was unable to get up. The victim's testimony, if believed, constitutes competent and credible evidence that appellant raped the victim.

{¶ 48} Moreover, we note that "'a rape conviction may rest solely on the victim's testimony, if believed, and that '[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.'" *State v. Horsley*, 4th Dist. No. 16CA3787, 2018-Ohio-1591, 110 N.E.3d 624, 2018 WL 1920040, ¶ 74, appeal not allowed, 153 Ohio St.3d 1497, 2018-Ohio-4092, 108 N.E.3d 1105; *accord State v. Johnson*, 112 Ohio St.3d

210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 53 (noting "[c]orroboration of victim testimony in rape cases is not required"); *State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, 2015 WL 2452024, ¶ 62, quoting *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, 2014 WL 1513893, ¶ 40, quoting *State v. Lewis*, 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (4th Dist. 1990).

{¶ 49} Furthermore, "'there is no requirement that testimonial evidence of sexual abuse must be corroborated by physical or other evidence.'" *State v. Maloney*, 2018-Ohio-316, 104 N.E.3d 973 (2nd Dist.), ¶ 61, appeal not allowed, 152 Ohio St.3d 1482, 2018-Ohio-1990, 98 N.E.3d 296, quoting *State v. Barnes*, 2d Dist. Montgomery No. 25517, 2014-Ohio-47, 2014 WL 98620, ¶ 31 (holding that while the only evidence of sexual abuse was the victim's testimony, "the fact that there was no DNA evidence of Barnes' sexual contact with H.S. does not render his conviction against the manifest weight of the evidence"); *State v. Thomas*, 9th Dist. Summit No. 27580, 2015–Ohio–5247, ¶ 31 (stating that "physical evidence is not required to support a rape conviction against a manifest weight challenge"). We also observe that the investigating officer testified that it was unlikely that any physical evidence would be discovered considering the amount of time that passed between the dates of the sexual contact and the victim's disclosure. *See State v. White*, 3rd Dist. Seneca No. 13-16-21, 2017-Ohio-1488, 2017 WL 1436371, ¶ 54.

{¶ 50} Additionally, even though the victim delayed reporting the sexual abuse, the jury was entitled to consider the credibility of the victim's testimony and her explanation for the delayed disclosure. Simply because the victim did not immediately report the sexual abuse does not mean that her testimony was not credible. *See State v. Bones*, 2d Dist. Montgomery No. 26017, 2015–Ohio–784, ¶ 33–34, 40 (concluding that defendant's rape convictions were not

against the manifest weight of the evidence even though victim did not report abuse until several years later).

**{¶ 51}** In addition, we do not believe that the record suggests that the victim's testimony "suffers from such serious discrepancies that we, as a reviewing court relying on 'a cold, paper record,' must supplant the jury's determination of credibility." *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732 (9th Dist), ¶ 30, quoting *In re B.B.*, 8th Dist. Cuyahoga No. 81948, 2003-Ohio-5920, 2003 WL 22510518, ¶ 31. We also observe that the jury extensively deliberated the matter before reaching its verdict. The jury obviously weighed the victim's testimony and ultimately found it credible. We, a court of review, are ill-equipped to second-guess the jury's decision.

**{¶ 52}** Consequently, based upon the foregoing reasons, we do not believe that the case at bar is one of those exceptional cases in which the evidence weighs heavily against the conviction. We therefore disagree with appellant that his convictions are against the manifest weight of the evidence. We likewise disagree that the record does not contain sufficient evidence to support his convictions.

**{¶ 53}** Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

**{¶ 54}** In his third assignment of error, appellant contends that the trial court erred by failing to merge counts one, two, and four for sentencing purposes. Appellant claims that the offenses were similar in import and committed with the same animus.

**{¶ 55}** We initially note that appellant did not argue before the trial court that the rape

offenses should merge. Thus, appellant has forfeited the right to raise this issue on appeal. It is well-established that """"an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'"" *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Appellate courts nevertheless have discretion to consider forfeited issues using a plain-error analysis. *E.g., Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27; *Quarterman* at ¶ 16. Crim.R. 52(B) provides appellate courts with discretion to correct "[p]lain errors or defects affecting substantial rights." "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights," i.e., the trial court's error must have affected the outcome of the trial. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "We take '[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Obermiller* at ¶ 62, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶ 56} A defendant demonstrates plain error by showing that a trial court imposed multiple sentences for allied offenses of similar import. State v. Underwood, 124 Ohio St.3d

365, 2010-Ohio-1, 922 N.E.2d 923, 2010 WL 45973, ¶ 31 (stating that "a defendant is prejudiced by having more convictions than are authorized by law"). A defendant cannot, however, establish plain error based upon a bare allegation that the trial court failed to inquire whether offenses merge. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 1 and ¶ 3; *accord State v. Daniels*, 1st Dist. Hamilton No. C-160203, 2017-Ohio-548, 2017 WL 657574, ¶ 14. Instead, in order to establish that the trial court plainly erred by failing "to inquire whether the convictions merge for purposes of sentencing was plain error," the defendant must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Rogers* at ¶ 3; *accord State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 25.

{¶ 57} In the case sub judice, appellant has not argued plain error on appeal. This court ordinarily declines to develop a plain-error argument for an appellant who fails to do so. *State v. Dailey*, 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, 2018 WL 5314869, ¶ 23, citing *Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, 2017 WL 2257731, ¶ 34, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (stating that appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties, because '"appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"'"); *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9 (explaining that reviewing court will not craft plain-error argument

for an appellant who fails to raise one).

{¶ 58} Nevertheless, after our review we do not believe that the record demonstrates a reasonable probability that appellant's convictions are for allied offenses of similar import committed with the same conduct and with the same animus.

{¶ 59} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, 922 N.E.2d 923, ¶ 23; *accord State v. Miranda*, 138 Ohio St.3d 184, 2014–Ohio–451, 5 N.E.3d 603; *State v. Washington*, 137 Ohio St.3d 427, 2013–Ohio–4982, 999 N.E.2d 661, ¶ 11.   The statute provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 60} For purposes of R.C. 2941.25 "a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12; *accord State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 17.   Consequently, "R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions."   *Whitfield* at ¶ 18. Accordingly, "once the sentencing court decides that the offender has been found guilty of allied offenses of similar import that are subject to merger,

R.C. 2941.25 prohibits the imposition of multiple sentences." *Williams* at ¶ 19 (citation omitted). The sentencing court thus has a mandatory duty to merge allied offenses. *Id.* at ¶ 27. "[I]mposing separate sentences for allied offenses of similar import is contrary to law and such sentences are void." *Id.* at ¶ 2. Therefore, "a judgment of sentence is void * * * when the trial court determines that multiple counts should be merged but then proceeds to impose separate sentences in disregard of its own ruling." *State ex rel. Cowan v. Gallagher*, 153 Ohio St.3d 13, 2018-Ohio-1463, 100 N.E.3d 407, ¶ 19, citing *Williams* at ¶ 28–29.

{¶ 61} Courts conduct a three-part inquiry to determine whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Earley*, 145 Ohio St.3d 281, 2015–Ohio–4615, 49 N.E.3d 266, ¶ 12, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892, ¶ 31 and paragraphs one, two, and three of the syllabus.

{¶ 62} Offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Ruff* at ¶ 21. Additionally, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. We further note that the

defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013–Ohio–4982, 999 N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

{¶ 63} In the case sub judice, we do not believe that the record evidences a reasonable probability that the trial court convicted appellant of allied offenses of similar import. Instead, the evidence supports a conclusion that appellant committed three separate offenses of rape. The evidence shows that the first rape occurred in July 2014, shortly after the victim's thirteenth birthday. On this occasion, appellant compelled the victim to engage in sexual contact with him through the use of force. The second rape occurred near Halloween 2014, when appellant inserted his fingers into the victim's vagina. The third rape occurred around the same time, but involved different conduct: appellant placed his penis inside the victim's vagina. Even if the evidence does not delineate the specific times at which the Halloween offenses occurred, the victim testified to two separate acts of sexual contact. Her testimony thus supports a finding that the two Halloween rape offenses were committed separately and with a separate animus.

{¶ 64} Moreover, several courts have held that "rape involving different types of sexual activity, such as vaginal intercourse, digital penetration, and oral intercourse, arise from distinct conduct and are not considered allied offenses, even when committed during the same sexual assault." *State v. Townsend*, 8th Dist. Cuyahoga No. 107186, 2019-Ohio-1134, 2019 WL 1417862, ¶ 70; *accord State v. Nicholas*, 66 Ohio St.3d 431, 435, 613 N.E.2d 225 (1993) (stating that vaginal intercourse, cunnilingus, and digital penetration are "three separate crimes involving distinct sexual activity. * * * Since each constitutes a separate crime with a separate animus, they do not constitute allied offenses of similar import."); *State v. Peace*, 11th Dist. Portage No.

2017-P-0037, 2018-Ohio-3742, 2018 WL 4443566, ¶ 28 (holding that kissing a bruise on child's hip distinct act from inserting tongue in child's vagina); *State v. Miller*, 6th Dist. Erie No. E-16-037, 2017-Ohio-7986, 2017 WL 4334185, ¶ 46 (noting "that it is well-established that instances of vaginal rape and anal rape may form the basis for two separate rape convictions"); *State v. Brindley*, 10th Dist. Franklin No. 01AP–926, 2002-Ohio-2425, ¶ 19-33 (holding that touching the victim's breast and then touching her vaginal area are separate offenses).

**{¶ 65}** Accordingly, based upon the foregoing reasons, we do not believe that a reasonable probability exists that the trial court convicted appellant of allied offenses of similar import.

**{¶ 66}** Within his third assignment of error, appellant also argues that the trial court erred by imposing consecutive sentences without making the requisite statutory findings in its sentencing entry. We point out that the Appellate Rules require each assignment of error to be presented separately. Also, App.R. 12(A)(2) allows a court to "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App. R. 16(A)." Moreover, App.R. 16(A)(3) requires an appellant's brief to include "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." We further note that appellate courts determine an appeal "on its merits on the assignment of error[s]" and not on "mere arguments." App.R. 12(A)(1)(b); *State v. Johnson*, 4th Dist. Scioto No. 17CA3814, 2018-Ohio-4516, 2018 WL 5892659, ¶ 8; *State v. Ross*, 4th Dist. No. 16CA3771, 2017-Ohio-9400, 103 N.E.3d 81, ¶ 53.

**{¶ 67}** In the case at bar, even though appellant failed to separately assign error to the trial court's imposition of consecutive sentences, we will briefly address the argument.

{¶ 68} Under R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before it may impose consecutive sentences. *State v. Blanton*, 4th Dist. Adams No. 16CA1031, 2018-Ohio-1275, 2018 WL 1611408, ¶ 96; *State v. Bever*, 4th Dist. Washington No. 13CA21, 2014-Ohio-600, 2014 WL 688250, ¶ 16; *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, 2013 WL 5740884, ¶ 64. In particular, a trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the harm caused by two or more multiple offenses is so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct. R.C. 2929.14(C)(4). A trial court is required to make the findings mandated by R.C. 2929.14(C)(4), but is not required to recite "a word-for-word recitation of the language of the statute * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* A complete failure to make the R.C. 2929.14(C)(4) findings renders a consecutive sentence contrary to law. *Id.* at ¶ 37.

{¶ 69} A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not, however, render the sentence contrary to law. *Id.* at ¶ 30. Instead, the inadvertent failure to incorporate the statutory findings in the sentencing entry constitutes a clerical mistake that the trial court may correct through a nunc pro tunc entry. *Id.*, citing *State v. Qualls*, 131 Ohio St.3d

499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 15; accord *State ex rel. Henley v. Langer*, 156 Ohio St.3d 149 2018-Ohio-5204, 123 N.E.3d 1016.

**{¶ 70}** In the case sub judice, our review reveals that the trial court recited the required statutory findings at the sentencing hearing. The court, however, appears to have inadvertently failed to incorporate all of the required findings into its sentencing entry. On this limited basis, we therefore sustain appellant's third assignment of error and remand the matter to the trial court so that it may enter a nunc pro tunc entry that incorporates the required findings.[2]

**{¶ 71}** Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error as it relates to the allied-offense issue. We, however, sustain his assignment of error as it relates to the trial court's failure to incorporate the consecutive-sentence findings into its judgment entry. On this limited basis, we remand this matter to the trial court so that it can issue a nunc pro tunc entry that incorporates the required findings.

IV

**{¶ 72}** In his fourth assignment of error, appellant asserts that his trial counsel failed to provide the effective assistance of counsel. Appellant alleges that counsel performed ineffectively by failing to lay a proper foundation concerning the victim's sexually transmitted disease. Appellant contends that if trial counsel had laid the proper foundation, then the trial court would have permitted appellant to introduce evidence that the victim tested positive for a sexually transmitted disease in February 2016.

**{¶ 73}** Appellant also asserts that counsel performed ineffectively by failing to object to

---

[2] We observe that the state agrees that the court did not incorporate the consecutive-sentence findings into its judgment entry and that we should direct the trial court to issue a nunc pro tunc entry.

admission of the victim's videotaped interview at the Mayerson Center. Appellant appears to assert that trial counsel should have objected to the videotape on the basis that introducing the out-of-court statements violated the rule against hearsay and his right to confront the victim.

{¶ 74} As we explain below, we do not believe that trial counsel performed ineffectively in either respect.

A

{¶ 75} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (explaining that the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶ 76} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of

the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

1

{¶ 77} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; accord Hinton, 571 U.S. at 273. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

{¶ 78} Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).

{¶ 79} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*,

4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

2

{¶ 80} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 91 (indicating that prejudice component requires a "but for" analysis). "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695. Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002); *see generally Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2008) (observing that prejudice may be presumed in limited contexts, none of which are relevant to appellant's first assignment of error). As we have

repeatedly recognized, speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, 2017 WL 5641282, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

B

**{¶ 81}** Appellant first faults trial counsel for failing to offer medical testimony during the rape-shield hearing regarding the victim's chlamydia diagnosis. Appellant believes that the absence of medical testimony led to the trial court's ruling excluding evidence concerning the victim's diagnosis. He then suggests that if trial counsel had presented a proper foundation for admitting evidence regarding the victim's chlamydia diagnosis, the court would have admitted the evidence at trial and a reasonable probability exists that the jury would have acquitted him.

**{¶ 82}** In the case sub judice, the transcript of the rape-shield hearing indicates that trial counsel made a calculated decision not to introduce medical testimony regarding chlamydia and its transmission. The court inquired of defense counsel, and counsel responded: "we weren't going to present specific expert testimony at trial as to chlamydia. [W]e were contemplating producing one of the doctors who had testified or who had done a report to testify * * *." Thus, trial counsel obviously was aware that he could introduce medical testimony but chose not to do so.

**{¶ 83}** Additionally, the court asked trial counsel to proffer what counsel expected any medical testimony to be. Counsel stated that he would proffer that the disease is "primarily sexually transmitted."

**{¶ 84}** Furthermore, defense counsel and the prosecutor discussed appellant's recent medical history and noted that in December 2015, he had been treated with an antibiotic for an apparent upper respiratory infection. The court questioned whether the antibiotic treatment would have cured any then-existing chlamydia from which the defendant may have been suffering, which then may have led to the negative test result. Neither party could positively answer the question and neither chose to pursue the issue through the use of medical testimony. Based upon the foregoing, we therefore presume that counsel's decision fell within the wide range of acceptable conduct. While we cannot speculate as to counsel's reasons for choosing not to present medical testimony, nothing in the record suggests that counsel's decision was so unreasonable as to be defective within the meaning of the Sixth Amendment.

**{¶ 85}** Even if we agreed that trial counsel performed defectively by failing to introduce medical testimony indicating that the victim's chlamydia diagnosis helped establish that appellant did not have sexual contact the victim, we cannot agree that counsel's alleged deficient performance prejudiced appellant's defense. First, appellant does not suggest what type of medical testimony counsel should have introduced in order to lay a proper foundation. Second, if trial counsel had introduced medical evidence at the rape-shield hearing to establish a foundation, whether the trial court ultimately would have admitted evidence regarding the victim's chlamydia diagnosis remains speculative. We again note that the victim's chlamydia diagnosis was remote in time to the allegations set forth in the indictment.

{¶ 86} Consequently, we disagree with appellant that trial counsel performed ineffectively by failing to introduce medical testimony during the rape-shield hearing.

C

{¶ 87} Appellant next claims that trial counsel performed ineffectively by failing to object to the victim's videotaped interview. Appellant contends that trial counsel should have argued that introducing the videotaped interview violated his right to confront the victim. He argues that the interview was not related to a medical purpose but, instead, was investigatory in nature. Appellant also asserts that trial counsel should have objected to the videotape as inadmissible hearsay.

{¶ 88} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those "who 'bear testimony'" against him. *Id.* at 51. The clause essentially "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The clause thus protects a defendant's rights to "'physically * * * face those who testify against him, and * * * to conduct cross-examination.'" *Id.* at 1017, quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). A testimonial out-of-court statement of a witness who does not appear at trial thus is inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), citing *Crawford,* 541 U.S. at 54.

{¶ 89} Importantly, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).

> This conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement. Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.*

{¶ 90} The *Green* court also stressed that none of its decisions interpreting the Confrontation Clause had required exclusion of "out-of-court statements of a witness who is available and testifying at trial." *Id.* at 161. Instead, most of the court's cases had been "focused on precisely the opposite situation—situations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial." *Id.* These situations had been subjected to careful scrutiny because they dispensed "altogether with the literal right to 'confrontation' and cross-examination * * *." *Id.* at 162. Consequently, the Confrontation Clause does not require exclusion of prior statements of a witness who testifies at trial. *Id.* at 164; *accord State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 66 (regarding admission of prior inconsistent statement, the Sixth Amendment only requires that a witness be "present in open court and confronted about his prior statement by all concerned: the state, the court, and defense counsel"); *State v. Powell*, 132 Ohio St.3d 233,

2012-Ohio-2577, 971 N.E.2d 865, ¶ 64 (stating that "admission of hearsay does not violate the Confrontation Clause if the declarant testifies at trial"); *State v. Kersbergen*, 12th Dist. Butler No. CA2014-10-218, 2015-Ohio-3103, 2015 WL 4611007, ¶ (determining that victim's out-of-court statements made at Mayerson Clinic did not violate Confrontation Clause when victim testified at trial); *State v. Gray*, 12th Dist. Butler No. CA2011–09–176, 2012–Ohio–4769, ¶ 48 (holding that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements"); *State v. Isa*, 2d Dist. Champaign No. 07-CA-37, 2008-Ohio-5906, 2008 WL 4899121, ¶ 16 ("Confrontation Clause does not bar admission of out-of-court statements where the defendant has the benefit of full and effective cross-examination of the declarant at the trial").

{¶ 91} In the case at bar, the victim testified at trial, and appellant had the opportunity to fully cross-examine her regarding her out-of-court statements. Therefore, admitting the victim's videotaped statements did not violate the Confrontation Clause.

{¶ 92} Appellant further claims, however, that the videotaped statements constitute inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible at trial, unless it falls under an exception to the Rules of Evidence. Evid.R. 802; *State v. Maxwell*, 139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930 (2014), ¶ 129.

{¶ 93} Evid.R. 803(4) contains an exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar

as reasonably pertinent to diagnosis or treatment."

{¶ 94} The hearsay rules except statements made for the purpose of medical diagnosis or

treatment due to the inherent reliability underlying the nature of those statements.

> [A] fundamental assumption underlying the medical-treatment exception is that that particular hearsay is reliable. *Dever*, 64 Ohio St.3d at 410–411, 596 N.E.2d 436. "[The] exception is premised on the theory that a patient's statements to her physician are likely to be particularly reliable," *United States v. Tome* (C.A.10, 1995), 61 F.3d 1446, 1449, and "carr[y] special guarantees of credibility," *White v. Illinois* (1992), 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848.

*State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 39.

{¶ 95} Additionally, statements made for the purpose of medical diagnosis and treatment

are considered reliable because "'facts reliable enough to be relied on in reaching a diagnosis

have sufficient trustworthiness to satisfy hearsay concerns.'" *State v. Dever*, 64 Ohio St.3d 401,

411, 596 N.E.2d 436 (1992), quoting 2 McCormick on Evidence (4th Ed.1992) 250; *accord*

*Muttart* at ¶ 41. Thus, "[i]f a statement is made for purposes of diagnosis or treatment, it is

admissible pursuant to Evid.R. 803(4)." *Muttart* at ¶ 34, quoting *Dever*, 64 Ohio St.3d at 414.

{¶ 96} A court that is determining whether a child-victim's statement was made for the

purpose of medical diagnosis or treatment may consider the following non-exhaustive list of

factors:

> (1) whether the child was questioned in a leading or suggestive manner, *see, e.g., Dever*, 64 Ohio St.3d at 410, 596 N.E.2d 436, citing *Idaho v. Wright* (1990), 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638; (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a "bitter custody battle," *id.*, citing [*State v.*] *Boston*, 46 Ohio St.3d [108,]at 108, 545 N.E.2d 1220 [(1989)]; and (3) whether the child understood the need to tell the physician the truth, *id.*, citing *People v. Meeboer* (1992), 439 Mich. 310, 322–323, 484 N.W.2d 621.

*Muttart* at ¶ 49.

{¶ 97} Furthermore, courts may consider "the age of the child making the statements, which might suggest the absence or presence of an ability to fabricate, and the consistency of her declarations." *Id.*, citing *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1219–1220 (Alaska 1991). Additionally, "the court should be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse." *Id.*, citing *State v. Gersin*, 76 Ohio St.3d 491, 668 N.E.2d 486 (1996).

{¶ 98} We also observe that "'courts have consistently found that a description of the encounter and identification of the perpetrator are within [the] scope of statements for medical treatment and diagnosis.'" *Echols*, quoting *In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-2320, ¶ 21, citing *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137, at ¶ 15; *State v. Richardson*, 12th Dist. Clermont Nos. CA2014-03-023, CA2014-06-044, and CA2014-06-045, 2015-Ohio-824, ¶ 36.

{¶ 99} Moreover, in sexual assault cases involving young victims, the state often presents testimony from a child advocacy social worker. Statements made to a child advocacy social worker may serve dual purposes: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33.

{¶ 100}    In general, statements serve an investigative purpose when they do not help the treatment provider diagnose a medical condition or recommend treatment. Thus, a rape victim's statement that the defendant "shut and locked the bedroom door before raping her; her

descriptions of where her mother and brother were while she was in the bedroom with [the defendant], of [the defendant]'s boxer shorts, of him removing them, and of what [the defendant]'s "pee-pee" looked like; and her statement that Arnold removed her underwear" "likely were not necessary for medical diagnosis or treatment."  *Arnold* at ¶ 34.

{¶ 101}     On the other hand, statements made while the medical professional obtains the victim's history, such as whether the defendant's penis entered the victim's vagina, generally fall within the medical-diagnosis-and-treatment exception.  *Arnold* at ¶ 37.  For instance, statements identifying the defendant as the perpetrator of the crime, where the defendant touched the victim, and how the sexual contact occurred generally are statements obtained for medical diagnosis and treatment.  *State v. Felts*, 2016-Ohio-2755, 52 N.E.3d 1223 (4th Dist.), ¶ 39, citing *Arnold* at ¶ 32, 38 (explaining that "information regarding the identity of the perpetrator, the type of abuse alleged, and the time frame of the abuse allows the doctor or nurse to determine whether to test the child for sexually transmitted infections"); *State v. Taylor*, 8th Dist. Cuyahoga No. 101704, 2015-Ohio-2513, 2015 WL 3899165, at ¶ 44 (noting that "statements regarding the identity of the perpetrator, the type of abuse alleged, the time frame of the abuse, and the identification of the areas where the child had been touched, were all for medical diagnosis"); *State v. Williams*, 1st Dist. Hamilton No. C–140199, 2015-Ohio-3968, 2015 WL 5772109, ¶ 31 ("Obtaining a thorough history regarding the causation and nature of the injury is an important component of medical diagnosis and treatment"); *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, 2015 WL 8484088, ¶ 27, quoting *In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-2320, 2005 WL 1119809, ¶ 21 ("'courts have consistently found that a description of the encounter and identification of the perpetrator are within scope of statements

for medical treatment and diagnosis'").

{¶ 102}     In the case sub judice, appellant broadly asserts that the victim's videotaped interview conducted at the Mayerson Center constitutes inadmissible hearsay. Appellant does not attempt to distinguish between statements that may have been made for medical diagnosis and treatment and those that may have been solely for an investigative purpose.   Moreover, appellant does not cite to the specific part of the record where trial counsel should have objected but did not.

{¶ 103}     We point out that for each assignment of error presented for review, an appellant is required to identify the specific parts of the record where the alleged error occurred. *See* App.R. 16(A)(7) (requiring that appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"). "This rule is designed 'to aid the reviewing court in determining whether any reversible error occurred in the lower court by having the complaining party specify the exact location(s) where such a determination can be made.'"  *Mayfair Village Condominium Owners Assn. v. Grynko*, 8th Dist. Cuyahoga No. 99264, 2013-Ohio-2100, 2013 WL 2291876, ¶ 6, quoting *Hildreth Mfg. v. Semco, Inc.*, 151 Ohio App.3d 693, 2003-Ohio-741, 785 N.E.2d 774, ¶ 32 (3d Dist.).   An appellate court may disregard an assignment of error when the appellant fails to identify the relevant portions of the record upon which an assignment of error is based.   *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *."); *see also Mayfair Village Condominium Owners Assn.* at ¶ 6 (An appellate

court is "not obliged to scour the record in search of evidence to support an appellant's assignment of error."), citing *Nob Hill E. Condominium Assn. v. Grundstein*, 8th Dist. Cuyahoga No. 95919, 2011-Ohio-2552, 2011 WL 2112734, ¶ 11.

{¶ 104}     In the case sub judice, without citation to specific parts of the videotaped interview to which trial counsel should have objected, we are unable to determine whether trial counsel was ineffective for failing to object to the child's videotaped interview.

{¶ 105}     Moreover, we do not believe that trial counsel performed ineffectively by failing to raise a blanket objection to the videotaped interview being played at trial.   The record does not clearly indicate that the entire purpose of the Mayerson Center interview was investigative in nature and did not serve any purpose related to medical diagnosis or treatment.

{¶ 106}     Consequently, we disagree with appellant that trial counsel performed ineffectively by failing to object to the child's videotaped interview.

{¶ 107}     Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V

{¶ 108}     In his fifth assignment of error, appellant argues that the trial court abused its discretion by limiting the cross-examination of Investigator Dick regarding allegations of sexual misconduct perpetrated on other minor household members by a third party.   Appellant contends that limiting his cross-examination deprived him of his Confrontation Clause right to a full and fair opportunity to cross-examine a witness and present a defense: that the victim had a motive to lie.

{¶ 109}     We initially observe that in the case at bar, appellant did not assert at trial

that limiting his cross-examination of Investigator Dick denied him of his confrontation rights. Moreover, appellant did not specifically object to the trial court's decision that limited his inquiry. Appellant also does not identify the place in the record where the alleged error occurred and what questions the trial court prevented him from asking.

{¶ 110}     We again note that App.R. 16(A)(7) requires an appellant's brief to include the "contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Further, App.R. 12(A)(2) provides that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Based upon this authority set forth in the appellate rules, we would be well-within our discretion to decline to address appellant's fifth assignment of error. We nevertheless will briefly review it.

{¶ 111}     The Confrontation Clause does not give a criminal defendant the right to unlimited cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *accord State v. Sandlin*, 4th Dist. Highland No. 07CA13, 2008-Ohio-1392, 2008 WL 786859, ¶ 21. Indeed, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

{¶ 112}     "'[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on * * * cross-examination [of a prosecution witness]

based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *State v. Abbasov*, 2d Dist. Montgomery No. 26470, 2015–Ohio–5379, ¶ 17, quoting *Van Arsdall*, 475 U.S. at 679. Therefore, the "'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993), quoting *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Reviewing courts thus will not reverse a trial court's decision regarding the scope of cross-examination unless the court abused its discretion.

**{¶ 113}** In the case sub judice, we do not believe that the trial court abused its discretion by limiting appellant's cross-examination of Investigator Dick. The court allowed appellant to inquire into the sexual abuse allegations two of the victim's female relatives levied against another relative two weeks or two months (no one is certain when) before the victim made her disclosure. The court simply prevented appellant from mentioning the other alleged perpetrator by name. The court otherwise allowed appellant to ask the detective about the prior allegations involving another family member.

**{¶ 114}** Moreover, appellant's counsel argued during closing arguments that the victim had a motive to lie and noted that her disclosure closely followed her two relatives' disclosures. Thus, the jury was aware of appellant's theory that the victim fabricated the allegations.

**{¶ 115}** Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.

VI

{¶ 116}     In his sixth assignment of error, appellant contends that cumulative errors occurred and that the cumulative effect of the errors deprived him of a fair trial.

{¶ 117}     The cumulative-error doctrine states that a conviction will be reversed if the cumulative effect of all the errors in a trial deprive a defendant of the constitutional right to a fair trial, even though each alleged instance of error may not individually constitute cause for reversal.  *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995); *State v. Jackson*, 4th Dist. Pickaway App. No. No. 11 CA20, 2012-Ohio-6276, 2012 WL 6761891, at ¶ 51.

{¶ 118}     In the case sub judice, we have not found merit to any of appellant's assignments of error.    The cumulative error doctrine, therefore, does not apply.    Thus, appellant's sixth assignment of error is without merit.

{¶ 119}     Accordingly, based upon the foregoing reasons, we overrule appellant's sixth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.